IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHIAN SMITH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHRISTIANA CARE HEALTH SERVICES ) <br> INC., ) <br> ) <br> Defendant. ) | C.A. No. 24-1416-MN |

**REPORT AND RECOMMENDATION**

Presently before the Court is the motion of Defendant Christiana Care Health Services, Inc. ("Defendant" or "ChristianaCare") to dismiss Counts I-VI and VIII-XI of the Complaint. (D.I. 8). For the reasons set forth below, the Court recommends that Defendant's motion be GRANTED.

**I.    BACKGROUND**

From January 2022 to November 2023, Plaintiff Shian Smith ("Plaintiff" or "Smith") worked as an office assistant for ChristianaCare, a network of private, non-profit hospitals in Delaware. (D.I. 1 ¶¶ 2 & 6). At the time of her termination on November 27, 2023, Plaintiff was nine months pregnant and scheduled to begin her Family and Medical Leave Act ("FMLA") maternity leave on December 4, 2023. (*Id.* ¶ 8).

On or around November 10, 2023, Plaintiff blocked provider schedules and rescheduled patient appointments to the following morning in anticipation of a lack of medical assistant coverage in the afternoon. (D.I. 1 ¶¶ 9-11). According to the Complaint, Plaintiff was not aware that blocking provider schedules was a prohibited action and relied on instructions from her team lead, Semmiko Stewart, "believing Stewart had managerial approval." (*Id.* ¶ 18). On November 16, 2023, Plaintiff met with her supervisor, Kristin Achuff, and another individual

named Crystal to discuss the rescheduled appointments. (*Id*. ¶ 12). Plaintiff explained that she was acting under Stewart's instructions in moving appointments and contacting the affected patients. (*Id*. ¶ 12; *see also id*. ¶ 10). During that meeting, Plaintiff also expressed concerns about being left to manage the front office alone "despite being 39 weeks pregnant, experiencing contractions, swelling in her legs and feet, and feeling unsafe due to her condition." (*Id*. ¶¶ 12 & 13). Plaintiff claims that she communicated concerns about "her well-being and the health of her unborn child" during this meeting but was never provided an accommodation. (*Id*. ¶¶ 14 & 15). She was left to work the front office alone on November 24, 2023. (*Id*. ¶ 16).

On November 27, 2023, Plaintiff was terminated by Achuff. (D.I. 1 ¶ 17). According to Plaintiff, the termination was without prior warnings, counseling or other disciplinary action and was "allegedly for altering the schedule and rescheduling patients without authorization." (*Id*. ¶¶ 17 & 19). Plaintiff alleges that her termination caused significant emotional distress, purportedly resulting in "premature labor, during which Plaintiff endured 48 hours of labor due to the anxiety and uncertainty stemming from her termination." (*Id*. ¶ 20).

On December 26, 2024, Plaintiff filed the present action against ChristianaCare, asserting claims of violations of the Americans with Disabilities Act of 1990 ("ADA"), the Delaware Discrimination in Employment Act ("DDEA"), FMLA and Title VII. (*See* D.I. 1). Specifically, Plaintiff accuses ChristianaCare of (i) discrimination, retaliation and failure to accommodate on the basis of disability in violation of the ADA and DDEA; (ii) discrimination and retaliation on the basis of sex in violation of the DDEA and Title VII; and (iii) interfering with Plaintiff's anticipated maternity leave in violation of the FMLA. On April 4, 2025, ChristianaCare filed the present motion under Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of all claims other than Plaintiff's FMLA claim. (D.I. 8 & 9). Briefing was complete on May 22, 2025. (D.I. 11 & 12).

## II. LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Mason v. Delaware (J.P. Court)*, C.A. No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up).

## III. DISCUSSION

ChristianaCare seeks to dismiss Plaintiff's claims under the ADA (Counts I, III and V), the DDEA (Counts II, IV, VI, IX and XI) and Title VII (Counts VIII and X).[1]

---

[1] ChristianaCare does not seek dismissal of Count VII (the FMLA claim). Additionally, there are two Counts X in the Complaint. (D.I. 1 at 19 & 20). The parties and the Court treat the second of those – Plaintiff's retaliation claim under the DDEA – as Count XI.

3

>   A.   **Count II (Disability Discrimination in Violation of the DDEA) and Count VI (Failure to Accommodate in Violation of the DDEA)**

In Counts II and VI, Plaintiff alleges that ChristianaCare discriminated against Plaintiff on the basis of disability and failed to accommodate her disability in violation of the DDEA. (D.I. 1 ¶¶ 39-50 & 87-96). ChristianaCare argues that Counts II and VI should be dismissed because the DDEA does not cover disability discrimination. (D.I. 9 at 4 (citing DEL. CODE ANN. tit. 19, § 711(b)); D.I. 12 at 1-2). In her answering brief, Plaintiff fails to address the argument that the DDEA does not cover disability discrimination. (*See generally* D.I. 11). In the Court's view, Plaintiff has conceded the deficiencies in pleading Counts II and VI. *See Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 477-78 (D. Del. 2021) ("As Defendants raised the issue of insufficiency of the Notice Letter's contents to provide pre-suit knowledge in their motion and Plaintiff did not respond, it is considered to have conceded the issue."); *RBAHTDSR, LLC v. Project 64 LLC,* C.A. No. 19-1280-RGA, 2020 WL 2748027, at *4 n.2 (D. Del. May 27, 2020) ("[W]hen one side files a motion raising an issue, and the other side does not respond, the other side is considered to have conceded the point."); *Blakeman v. Freedom Rides, Inc.*, C.A. No. 12-416-LPS, 2013 WL 3503165, at *13 (D. Del. July 10, 2013) ("In such situations, where a party responds to a dispositive motion, but only attempts to defend some subset of the claims that are subject to the motion, courts have consistently held that the claims that are not defended are deemed abandoned."). The Court thus recommends that Counts II and VI be dismissed.

>   B.   **Count I (Disability Discrimination in Violation of the ADA) and Count V (Failure to Accommodate in Violation of the ADA)**

ChristianaCare argues that the Counts I and V – disability discrimination under the ADA and failure to accommodate under the ADA, respectively – should be dismissed because Plaintiff failed to allege that she has a qualifying "disability" under the ADA. (D.I. 9 at 5-7; D.I. 12 at 2-3). In response, Plaintiff argues that the Complaint's description of her "being 39 weeks pregnant,

4

experiencing contractions, swelling in her legs and feet, and feeling unsafe due to her condition" provides sufficient facts for the Court to infer that Plaintiff suffered from a "disability" within the meaning of the ADA. (D.I. 11 at 5 (citing D.I. 1 ¶¶ 13, 14 & 30)).[2] The Court agrees with ChristianaCare.

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). The ADA provides a non-exhaustive list of "major life activities" including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. § 12102(2)(A). District courts within the Third Circuit have recognized that so-called "routine pregnancies" do not meet the definition of "disability" but that complications arising out of pregnancy can constitute a qualifying disability. *See Seiple v. Two Farms, LLC*, No. 20-5650, 2021 WL 601171, at *4 (E.D. Pa. Feb. 16, 2021); *Brown v. Area Health*, No. 17-1827, 2019 WL 1745653, at *4-5 (E.D. Pa. Apr. 17, 2019); *Ahern v. EResearch Tech. Inc.*, 183 F. Supp. 3d 663, 668-69 (E.D. Pa. 2016); *Oliver v. Scranton Materials, Inc.*, No. 14-549, 2015 WL 1003981, at *7-8 (M.D. Pa. Mar. 5, 2015); *see also* 29 C.F.R. app. § 1630.2(h) ("[A] pregnancy-related impairment that substantially limits a major life activity is a disability under the first prong of the definition.").

Against this background, the Court finds Plaintiff's allegations regarding a qualifying disability deficient. Plaintiff does not allege that she has any disability other than complications arising from her pregnancy. And as to pregnancy-related complications, Plaintiff only alleges that

---

[2]   In its reply brief, ChristianaCare points out that Plaintiff appears to be relying on facts absent from the Complaint, including that Plaintiff suffered from a "high-risk" pregnancy that "limited her standing or walking." (D.I. 12 at 2-3 (citing D.I. 11 at 5)). At this pleading stage, the Court is only considering the allegations found in the Complaint.

she was "39 weeks pregnant, experiencing contractions, swelling in her legs and feet, and feeling unsafe due to her condition." (D.I. 1 ¶ 13). The Complaint provides insufficient details as to "what complications she experienced" and "how those complications substantially limited one or more major life activities." *Arozarena v. Carpenter Co.*, No. 17-5457, 2018 WL 2359143, at *2-3 (E.D. Pa. May 24, 2018); *see also Oliver v. Scranton Materials, Inc.*, C.A. No. 14-549, 2015 WL 1003981, at *8 (M.D. Pa. Mar. 5, 2015) ("[T]he Complaint does not specify what 'complications' and 'surgery' Plaintiff actually experienced, but only recites, in talismanic fashion, that some complications and a surgery occurred."). Without more, the Court cannot draw the reasonable inference that Plaintiff suffered from a pregnancy-related impairment that constitutes a qualifying disability under the ADA. The Court recommends that Counts I and V be dismissed.[3]

### C. Count III (Interference and Retaliation in Violation of the ADA), Count IV (Interference and Retaliation in Violation of the DDEA), Count X (Retaliation in Violation of Title VII) and Count XI (Retaliation in Violation of the DDEA)

ChristianaCare argues that Plaintiff's retaliation claims under the ADA (Count III), Title VII (Count X) and the DDEA (Counts IV and XI) should be dismissed because she fails to adequately plead that she engaged in a protected activity. (D.I. 9 at 9-12; D.I. 12 at 4).[4] To state a claim for retaliation under the ADA, Title VII and the DDEA, a plaintiff must allege that (i) she engaged in a protected activity, (ii) her employer took an adverse employment action after or contemporaneous with the protected activity and (iii) the protected activity and the adverse employment action were causally linked. *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41

---

[3] ChristianaCare further argues that Count V should be dismissed because Plaintiff fails to plausibly allege that she requested an accommodation for her disability. (D.I. 9 at 7-9 (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999)). Because Plaintiff has failed to adequately allege that she has a "disability" within the meaning of the ADA, the Court does not reach the issue of accommodation.

[4] For all three statutes, ChristianaCare only disputes the sufficiency in pleading the protected activity prong.

(3d Cir. 2006) (Title VII); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (ADA); *Sargent v. Amazon.com, Inc.*, C.A. No. 23-1330-RGA, 2024 WL 3936490, at *4 (D. Del. Aug. 26, 2024) (applying same framework to DDEA retaliation claim). Relying on four paragraphs from the Complaint, Plaintiff responds that she engaged in a protected activity when she "raised concerns about her working conditions to supervisors and HR" and "requested accommodations due to her pregnancy complications and was terminated soon thereafter." (D.I. 11 at 5 (citing D.I. 1 ¶¶ 13-15 & 17)).

Because the parties brief the Title VII and DDEA issues together, and because DDEA mirrors Title VII and offers the same protections from discrimination, the Court will address these federal and state law claims together under the Title VII framework. *See Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79, 82 n.4 (3d Cir. 2015) ("[T]he evidence needed to prevail under the DDEA is generally the same as that needed to prevail under Title VII. Accordingly, because Hyland's Title VII claims fail, her DDEA claims fail, too."). But because "protected activity" under the ADA differs from that of Title VII and the DDEA, the Court will address the retaliation claim under the ADA separately.

        1.    <u>Retaliation Under Title VII and the DDEA (Counts IV, X and XI)</u>

With respect to Plaintiff's retaliation claims under Title VII and the DDEA, ChristianaCare argues that Plaintiff fails to allege that she engaged in a protected activity – namely, that she complained to ChristianaCare about a violation of Title VII or the DDEA. (D.I. 9 at 10). Plaintiff responds that "rais[ing] concerns about her working conditions to supervisors and HR" and "request[ing] accommodations due to her pregnancy complications" are sufficient to constitute protected activity under the statutes. (D.I. 11 at 5). The Court agrees with ChristianaCare.

7

Under Title VII and the DDEA, protected activity includes not only an employee's filing of formal charges of discrimination against an employer but also "informal protests of discriminatory employment practices, including making complaints to management." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)).  That being said, to constitute a protected activity under Title VII or the DDEA, the opposition to discrimination (even if informal) must "explicitly or implicitly" complain of discrimination based upon race, color, religion, sex or national origin.  *Cf. Barber v. CSK Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995) (for analogous retaliation claim under Age Discrimination in Employment Act, letter to HR about unfair treatment insufficient to constitute "protected activity" where there were no complaints of illegal age discrimination); *see also Daniels*, 776 F.3d at 193 ("The complaint must allege that the opposition was to discrimination based on a protected category, such as age or race.").[5]

Because Plaintiff did not file a formal complaint with the Equal Employment Opportunity Commission ("EEOC") or Delaware Department of Labor ("DDOL") before being terminated, she must rely upon "informal protests of discriminatory employment practices" to allege a protected activity within the meaning of Title VII and the DDEA. *Daniels*, 776 F.3d at 193.  Here, Plaintiff only alleges that she met with her supervisors and "expressed concerns about being left to manage the front office alone on November 24, 2023" due to her purported pregnancy complications. (D.I. 1 ¶¶ 12-14).  The Complaint contains no allegations that Plaintiff complained – either

---

[5]     Contrary to Plaintiff's suggestion (D.I. 11 at 5), requesting an accommodation is not a standalone protected activity within the meaning of Title VII or the DDEA. *See, e.g.*, *Divine Equal. Righteous v. Overbrook Sch. for the Blind*, No. 23-846, 2023 WL 4763994, at *10 (E.D. Pa. July 26, 2023) ("Merely applying for a religious accommodation – rather than opposing the allegedly unlawful denial of a religious accommodation – does not constitute protected activity for the purpose of a Title VII retaliation claim."); *Hyland*, 608 F. App'x at 82 n.4 (Title VII and DDEA claims rise and fall together).

implicitly or explicitly – to anyone at ChristianaCare that her request was denied, let alone that the denial constituted discrimination based upon her sex. *See Barber v. CSK Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) ("A general complaint of unfair treatment does not translate into a charge of illegal *age* discrimination." (emphasis in original)). Accordingly, Plaintiff fails to plausibly allege that she engaged in any "informal protests" of discrimination sufficient to qualify as "protected activity" under Title VII or the DDEA. The Court thus recommends that Plaintiff's claims of retaliation under Title VII and the DDEA (Counts IV, X and XI) be dismissed.

### 2. Retaliation Under the ADA (Count III)

As to the ADA, Plaintiff also claims that she was terminated in retaliation for requesting an accommodation for her pregnancy-related complications. (D.I. 1 ¶¶ 51-63). "[R]equesting a reasonable accommodation for a disability is a protected activity under the ADA." *Hitch v. Frick Pittsburgh*, No. 23-2065, 2024 WL 2237963, at *2 (3d Cir. May 17, 2024); *see also Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010) ("Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation."). ChristianaCare argues that Plaintiff fails to allege that she made a good faith request for a disability accommodation and that any allegations regarding a requested accommodation are conclusory. (D.I. 9 at 11-12). Plaintiff again responds that "rais[ing] concerns about her working conditions to supervisors and HR" and "request[ing] accommodations due to her pregnancy complications" was sufficient. (D.I. 11 at 5).

As an initial matter, that Plaintiff failed to adequately plead a qualifying disability (*supra* § III.B) does not render her ADA retaliation claim meritless. In fact, a plaintiff asserting retaliation under the ADA need not be "disabled" within the meaning of the ADA. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997) ("Unlike a plaintiff in an ADA discrimination

9

case, a plaintiff in an ADA retaliation case need not establish that [s]he is a 'qualified individual with a disability.'"). Rather, a plaintiff need only have engaged in protected activity. Where, as here, a request for accommodation constitutes the protected activity under the ADA, a plaintiff need only allege sufficient facts for the Court to infer that she made a "good faith request for an accommodation." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003).

ChristianaCare first argues that Plaintiff fails to adequately plead that she made a "good faith" request; in ChristianaCare's view, that the request occurred after Plaintiff rescheduled appointments without approval negates any inference of good faith. (*See* D.I. 9 at 11). The Court disagrees. Because Plaintiff was still employed during the meeting where she expressed concerns about being left alone in the front office (D.I. 1 ¶¶ 13-15), a good faith request for a reasonable accommodation to address pregnancy complications could still have been raised then. Stated differently, the Court is unable to conclude that any request was simply an attempt to block an imminent termination or for some other non-protected reason. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003) ("[N]othing on this record suggests that [plaintiff's] request was motivated by anything other than good faith . . . .").

Whether Plaintiff plausibly alleged requesting such a reasonable accommodation is another matter. Although Plaintiff argues that she alleged a request for accommodation for her pregnancy complications in Paragraphs 13-15 and 17 of the Complaint (D.I. 11 at 5), the Court disagrees. Paragraph 17 concerns only Plaintiff's termination. In Paragraphs 13 and 14, Plaintiff alleges that she expressed concerns about "being left to manage the front office alone on November 24, 2023" and further that she expressed "concerns about her well-being and the health of her unborn child" to her supervisor during a meeting. (D.I. 1 ¶¶ 13 & 14). But there is no mention of requesting an accommodation in those paragraphs. That only appears in Paragraph 15, where Plaintiff simply

alleges that "[n]o accommodation was provided to Plaintiff despite her repeated requests for assistance and her medical condition." (*Id.* ¶ 15). Plaintiff makes no attempt to connect the allegations in Paragraph 15 (that no accommodation was provided) to her specific concerns about being left alone or her "medical condition." In fact, Plaintiff does not even articulate what the requested accommodations were – *e.g.*, whether Plaintiff asked to be excused from working alone, for assistance from other employees or for some other accommodation. The Court is left only to speculate as to what – if any – specific accommodation was requested, let alone whether it was reasonable. Without more, Plaintiff has merely set forth a conclusory allegation that she requested an accommodation. That is insufficient. *See Hitch v. Frick Pittsburgh*, No. 23-2065, 2024 WL 2237963, at *2 (3d Cir. May 17, 2024) ("[A]llegations of discrimination that 'resemble a formulaic recitation of the elements of a claim or other legal conclusion' are conclusory." (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789-90 (3d Cir. 2016))). The Court therefore recommends that Plaintiff's claim of retaliation under the ADA (Count III) be dismissed.

> **D.  Count VIII (Gender/Pregnancy Discrimination in Violation of Title VII) and Count IX (Gender/Pregnancy Discrimination in Violation of DDEA)**

In Counts VIII and IX, Plaintiff alleges that ChristianaCare discriminated against her on the basis of gender/pregnancy in violation of Title VII and the DDEA. (D.I. 1 ¶¶ 110-18 (Title VII) & 119-27 (DDEA)). To state a claim of discrimination under Title VII and the DDEA, a plaintiff must plausibly allege that: (1) she is a member of a protected class, (2) she was qualified for the position she sought to retain, (3) she suffered an adverse employment action and (4) similarly situated persons who were not members of her protected class were treated more favorably or there are other "circumstances that could give rise to an inference of intentional discrimination." *Drummond v. Amazon.com.dedc, LLC*, C.A. No. 18-293-RGA, 2018 WL 5629811, at *5 (D. Del. Oct. 31, 2018) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)). ChristianaCare argues

that Counts VIII and IX should be dismissed because Plaintiff does not allege that similarly situated non-pregnant individuals were treated more favorably. (D.I. 9 at 12-13; D.I. 12 at 4-6).[6]

Determining whether employees are similarly situated accounts for factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the alleged misconduct. *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011); *Rich v. Univ. of Delaware & Chief Patrick Ogden*, C.A. No. 22-27-RGA, 2023 WL 4265457, at *3 (D. Del. June 29, 2023). Plaintiff argues that the Complaint sufficiently identifies her team lead, Semmiko Stewart, as a similarly situated person that was treated more favorably. (D.I. 11 at 5-6). Although Plaintiff need not show an exact match between herself and Stewart, she must show sufficient similarity. *See Verdu v. Trs. of Princeton Univ.*, No. 20-1724, 2022 WL 4482457, at *5 (3d Cir. Sept. 27, 2022). The Complaint is silent, however, as to Stewart's gender, pregnancy status and employment status – all needed to determine whether Stewart was a similarly situated person outside of Plaintiff's protected class. Instead, the Complaint only highlights differences between the two individuals. (*Compare* D.I. 1 ¶ 6 (identifying Plaintiff as "a former Office Assistant"), *with id.* ¶ 9 (identifying Stewart as "Senior Medical Assistant" and Plaintiff's "team lead")). And notwithstanding Plaintiff's argument to the contrary, the Complaint is actually silent as to whether Stewart was disciplined for the rescheduling incident. (*Compare* D.I. 11 at 5-6, *with* D.I. 1 ¶ 9).[7]

Finally, Plaintiff complains of being called "a baby" by her coworkers and claims that she was told she received preferential treatment "because of her age and pregnancy." (D.I. 11 at 6).

---

[6]     ChristianaCare only disputes that the "similarly situated" prong was adequately pled.

[7]     Plaintiff again appears to be relying on facts that appear nowhere in the Complaint to show that she adequately pled her claims. That is not permissible. *See Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) ("And it is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988))).

Plaintiff's gender/pregnancy claims under Title VII and the DDEA in Counts VIII and IX are based only on her gender or pregnancy status – not age. (D.I. 1 ¶¶ 110-27). And Plaintiff has failed to plausibly allege how this complained-of conduct is evidence that ChristianaCare's decision to terminate her was based on her pregnancy status. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) ("Although he need not establish that precise kind of disparate treatment to establish a claim of discrimination, he must establish some causal nexus between his membership in a protected class and the decision to not rehire him.").

In sum, because Plaintiff fails to plausibly allege – with sufficient facts – that similarly situated persons outside of her protected class were treated more favorably, the Court recommends that her claims of gender/pregnancy discrimination under Title VII (Count VIII) and the DDEA (Count IX) be dismissed.

### E.     Failure to Exhaust Administrative Remedies

ChristianaCare also argues that all non-FMLA counts (Counts I-VI and VIII-XI) should be dismissed because Plaintiff failed to adequately allege that she exhausted her administrative remedies. (D.I. 9 & 13-14). Under Title VII, the ADA and the DDEA, a plaintiff must exhaust her administrative remedies before filing a civil action in federal court. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117; Del. Code Ann. tit. 19, § 714(a); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (Title VII); *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999) (ADA claim); *Bardell v. Banyan Delaware, LLC*, C.A. No. 23-148-WCB, 2024 WL 727711, at *3 (D. Del. Feb. 22, 2024) (DDEA claim). A plaintiff must first lodge a complaint with either the EEOC or equivalent state agency responsible for investigating claims of employment discrimination (here, the DDOL). *See* 42 U.S.C. § 2000e-5(e); Del. Code Ann. tit. 19, § 712(c)(1). If the EEOC or state agency decides not to pursue a plaintiff's claims, it issues

a right-to-sue letter allowing a plaintiff to pursue a civil action. *See* 42 U.S.C. § 2000e-5(f)(1); DEL. CODE ANN. tit. 19, § 714(a). A claim under Title VII or the ADA must be preceded by an EEOC right-to-sue notice. *Thomas v. Christiana Health Care Servs.*, C.A. No. 21-746-CFC, 2023 WL 2655680, at *3 (D. Del. Mar. 27, 2023) ("[A] DDOL right to letter cannot unlock the door to federal court; that key only comes in the form of an EEOC right to sue letter."); *Saylor v. Delaware Dep't of Health & Soc. Servs., Div. of Child Support Enf't*, 569 F. Supp. 2d 420, 423 (D. Del. 2008). And a claim under the DDEA must be preceded by a Delaware right-to-sue notice. *See* DEL. CODE ANN. tit. 19, § 714(a) ("A charging party may file a civil action in Superior Court, after exhausting the administrative remedies provided herein and receipt of a Delaware Right to Sue Notice acknowledging same.").

Plaintiff alleges she "received her notice of right to sue on October 8, 2024." (D.I. 1 ¶ 26). But as ChristianaCare notes, Plaintiff did not attach a copy of the notice to her Complaint, nor did she identify the issuing agency or the claims raised in the underlying charge. (D.I. 9 at 13). Although exhaustion is a prerequisite to filing suit under Title VII, the ADA and DDEA, failure to exhaust is an affirmative defense falling on defendants to raise. *See Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997) ("Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving that the plaintiff has failed to exhaust administrative remedies."). In the Third Circuit, there are conflicting statements of the law on whether Plaintiff must affirmatively plead that she exhausted her remedies to adequately state a claim under Title VII and the ADA. *Compare id.*, *with Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997) (exhaustion of administrative remedies is element of Title VII claim that plaintiff is required to affirmatively plead); *see also Karupaiyan v. Wipro Ltd.*, No. 23-2424, 2025 WL 89076, at *2 (3d Cir. Jan. 14, 2025) ("There might be some tension in our caselaw regarding whether a

Title VII or ADA plaintiff must affirmatively allege exhaustion in order to state a claim."). Although the Court tends to think that Plaintiff is under no affirmative duty to plead exhaustion,[8] the Court need not reach the issue because dismissal is warranted for the reasons set forth above.

### F. Plaintiff's Request for Leave to Amend

In a few sentences, Plaintiff generically requests leave to amend if the Court "finds that any of her allegations and counts in her Complaint are legally insufficient." (D.I. 11 at 6). Under these circumstances, the request for leave to amend is not adequately before the Court. *See LabMD Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022) ("[A] plaintiff must properly request leave to amend a complaint in order for the district court to consider whether to permit amendment. A plaintiff properly requests amendment by asking the district court for leave to amend and submitting a draft of the amended complaint, so that the court can judge whether amendment would be futile. The court may deny leave to amend if the plaintiff does not provide a draft amended complaint." (citations omitted)). Plaintiff's request for leave to amend is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's motion to dismiss be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) pages and filed within fourteen (14) days

---

[8] For example, in the context of prisoner litigation, a plaintiff is under no obligation to affirmatively plead exhaustion because the statute imposes no such pleading requirement. *See Jones v. Bock*, 549 U.S. 199, 216, (2007) ("We conclude that failure to exhaust is an affirmative defense under the [Prison Litigation Reform Act], and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). The same should be true here.

after being served with a copy of this Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2). Any responses to the objections shall limited to ten (10) pages and filed within fourteen (14) days after the objections. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: January 5, 2026

_____
UNITED STATES MAGISTRATE JUDGE